Good morning. We're very excited to be here at Stanford today to hear arguments. Our first case is going to be 23-1160, Knox v. DOJ. Mr. Burns? Thank you, Your Honor. May it please the Court, I will say this is the first time I've ever been admitted to Stanford, so. Me too. They may not keep you. There was some hint. So the bottom line in this case is we agree with one line in the judge's opinion, the AHA's opinion, which is he says this case is really about the timing of promotions and within grade increases. In this particular case, the court, the administrative judge, after the government, after it litigated the matter for four years, suddenly conceded our central point, which is that the within grade increase that my client was entitled to was withheld because of the erroneous assumption that he was on regularly versus leave without pay U.S. If you don't mind, and I promise that we will not cut you off when you have arguments you want to make, but we do have this room full of students, so let's just for a second just put a little context on this case. I know that you know it, you know it, but they don't. So just give them a little bit of context. Military guy, right? Tony Knox was a Drug Enforcement Administration special agent, and the special agents of the Drug Enforcement Administration have their promotional track. After so many years within grade in any particular grade of the federal service, they're entitled to apply for promotions. Certain grades up to grade. Well, just to be clear, so when you're in this position, your within grade step increases are automatic, right? That is correct. So from one year to the next, or sometimes they're spaced out by two years, you automatically get this little mini bump in your pay no matter what. And then there's a promotion that you're eligible for, and you're able to apply for it after a certain amount of time in service. Correct. But it's not guaranteed, correct? You get the grade increases automatically. You don't necessarily get the promotion automatically. That is true, and one of the central issues in this case is the administrative judge's interpretation of reasonable certainty as a requirement of automatic promotion. And so what happened here is Mr. Knox was deployed for Operation Iraqi Freedom, and he served honorably. He was a helicopter pilot. He was in combat. And there's a statute, USERRA, that indicates that when a military gentleman or servicewoman is deployed, they should not be set back in their government career by virtue of their deployment in any way, correct? That is correct. A non-legal version of it. It's also part of a statutory scheme, and there's a greater issue, I think, that is not reflected in some of the briefs. This group here is in a volunteer Army situation, a volunteer military service situation. The Uniformed Services Employment and Reemployment statute this circuit has repeatedly used has its greatest application to reservists who are called up for duty to support active duty operations overseas for wars, for crises that we face, and we face many. And so Congress repeatedly has said, we want to make sure that military members who are deployed for active duty services, the employer's obligation is you ought to treat them as if they never left. You ought to treat them the exact same way as if they stayed. And so your argument here, now getting to the meat of your legal argument, why is it that this particular employee, Mr. Knox, this military member, why would he have necessarily gotten this promotion if he had been able to apply for it at the time that you suggested? I think February he...  Right. And so what caused him not to be able to apply for it, and what makes you think it's so clear he would have gotten it that we can be reasonably certain he would have gotten it? There are three aspects to this. The first is that there were two, quote, the judge calls them mistakes. I suppose discrimination is a form of mistake, according to this judge, and I take exception to that. What happened was while he was deployed, the time he was deployed for a portion of it was treated as if he was on regularly. But the problem is you say discrimination, but there is testimony in this record that it was just a mistake. They just made a mistake. Discrimination is a mistake. No, but not all mistakes are discrimination. No, but the mistake was based upon a calculation directly related to his military service. They just miscalculated. There's testimony in the record they just miscalculated the dates, and they didn't process it in a timely fashion like they should have. Discrimination is when they do something with a sense of intent, right? No, not on a reemployment benefit. The reemployment benefit is granted because of the military service. So the denial of the benefit of the within-grade increase, as even the A.J. found and the government conceded, was a violation of USERRA. It was not discrimination necessarily. Well, but a reemployment benefit, the denial is really a violation of the statute sine qua non. I know, but you're trying to equate it. You're trying to make it seem like every time there's a mistake that is corrected, it is automatically discrimination. It's not automatically discrimination. This mistake not only wasn't corrected, it was compounded. The agency didn't correct this mistake until two and a half years of litigation, 16 years later. The agency was given every opportunity to correct it in a timely fashion because my client actually complained about it to his supervisor. Setting the discrimination aside, you really don't need to show that. That's correct. Right? You just need to show that it's reasonably certain. Absolutely. So the question was, how can you show that it's reasonably certain that he would have had that increase in grades? Statistical evidence and actual evidence. And let's do the statistical evidence first. There are a lot of figures shown around, but if you look at our appendix, our brief to the court, to the administrative judge below, it said the agency actually had the records to produce on its promotions. There were 1,386 special agents considered promotion to a GS-13 serving the three-year period. Of those, 1,366 were promoted. The only 20 that weren't had disciplinary issues or insufficient time in grade. Our client had no disciplinary history. What about the response that maybe as of February 2004, there would have been a little bit, not a suspension, but some foresight as to that a suspension of these promotions was coming down the line, and so it might not have been reasonably certain. Well, but it was reasonably certain because even after the February date, all his supervisors put in for his promotion. And here's where I want to just shift a little bit. What is the time period, like from when somebody puts in for, like how far in advance of February? Is there any evidence in the record of how far in advance of February had this occurred at the time that it was supposed to, that the supervisors would have put in the paperwork? Yeah, he put in for it in November. And what happened is under the DEA's policy, they're supposed to process that within 30 days. For reasons we don't know, because we never got discovery, we don't know why that wasn't done. It wasn't done. The agency, the supervisors, even there's a memo where the supervisor says, oh, we've got to move this along. I'm not sure why this didn't happen. And so what he does is he gets the approvals. All those approvals are in place before the, quote, policy change, which frankly isn't even implemented for another year. All those are in place. He has met all the criteria for promotion. Can I ask you a question? One of the things that I thought you did a really good job of is pointing out that the board in this case basically never used the words reasonable certainty. No. Is it your argument to us that the board basically applied too strict of a standard to your client and required basically that they decided that anything discretionary, if there's any discretionary component to it at all, it can never be reasonably certain? That is correct.  They read the reasonableness out of it, and what they did was they created a loophole that this court has foreclosed. There's a reason for reasonable certainty. If an employer could just say any entitlement or benefit that you might get is discretionary and we just decided not to give it to you, that would eradicate the underlying protection of the escalator clause itself. The escalator clause, for those who don't know, is the thing that protects it. Well, what should we do? I'm sorry. Go ahead. Just one last thing, and then I'll for sure stand down. If the board in this instance didn't apply the correct standard, and I didn't see the word reasonable certainty in their opinion, so I'm kind of on your side on this one, but if they didn't apply the correct standard, isn't the right answer for us as an appellate court to send this case back to them and say re-evaluate it under the correct standard? Because I think you're sort of asking us to do that, and I don't really do fact finding. That's not my thing. No, but I think the analysis is this. The government conceded a couple of things. It conceded that the original denial of the within-grade increase was due to his military service, a misapplication. No, that's not quite correct. They said that there was an administrative error for why there was a delay in the within-grade increase, and that there was no link between that two-month delay and Mr. Knox's 12-month military service. The administrative judge said that, and one of the issues we had on discovery is what evidence. He doesn't cite a single brief, a single statement, a single affidavit, a single case, anything in the record. It came about in his head as a get-out-of-jail-free card. So are you suggesting then, in response to Judge Hunt's question, that there is no evidence in the record to support that particular fact finding?  Go ahead. Just to organize this argument, now we're going back to the within-grade increase and whether there was a discriminatory attempt against his military service. That's a separate question from this reasonable certainty issue, whether we would have been reasonably certain that Mr. Knox would have received the GS-13 promotion, but for the military service. And so what I understand your point about how the Board here did not look through this fact pattern using the reasonable certainty standard, but we do have this case called Hayden. Yes. And that fact pattern looks very similar to Mr. Knox's fact pattern, where in Mr. Hayden's case, he was seeking a promotion. He was denied that promotion. He had a military service. He had an excellent performance record. There was a very, very high promotion rate for people similarly situated, and the Board concluded that it would not have been reasonable certainty he would have gotten the promotion, and this Court affirmed. So just looking at the facts of Hayden, what the outcome of Hayden was, and what we have here, why should we think about this case differently than the Hayden case? In Hayden, the promotion rates were lower, and the government actually produced evidence that he might not have gotten the promotion. I think it's important to note that in this particular case, the Drug Enforcement Agency produced no evidence, and when we asked in Interrogative 17 why did he not get promoted, they objected, and that objection was upheld. We got no evidence on that issue. When we asked them for their affirmative defenses. I'm sorry. Is that sufficient? Question. You complained about not having discovery. What is it if we vacate and remand this because the Board did not apply the correct legal standard, what do you envision being the next steps of the Board? Is there then discovery, and then they go forward for a trial, or do you think that's just not even necessary? I don't think that's necessary. I think the evidence is compelling. But you said you didn't have discovery. We did not. Did the government have sufficient discovery? The burden is on the government to explain why he didn't get promoted, not us. Under you, Sarah, the burden shifts to the government. That burden was never applied. We were made to prove beyond a reasonable doubt why our position was correct, and this judge marshaled no evidence. Well, I know, but, see, you already have me on that part. Sure. I told you that so that you don't have to keep beating that dead horse. Okay, certainly. But the bigger question is what do we do with the case? If I'm with you on they didn't apply the right legal standard, what is the next step? That's what I'm struggling with. Well, we think that the evidence is compelling enough for you to work. And then the alternative, because a good attorney always says in the alternative, a remand could be appropriate. It cannot be to this administrative judge. The level of hostility was severe. How do you expect on the reasonable certainty question? That's a question of fact, right? Yes. Okay, so you're saying that that standard was never applied.  There was never a fact finding on it. No. How can we make a fact finding as an appellate court? Well, I think the evidence in the case that was presented is that he met all the criteria for the promotion. Statistically speaking, all of those promotions had been granted, unless there was a disciplinary history, a lack of time and grade. None of that existed. His supervisors approved his promotion. He had excellent reviews, and, therefore, it was reasonably certain that that promotion. It still sounds like a factual question to me. An appellate court is not supposed to address that. I do understand that. Don't talk over me. Getting back to the facts here, did Mr. Knox receive SAC approval? Yes. The special agent in charge. Yes. Because the record is a little muddy to me. I mean, yes, the supervisor in Portland appeared to approve it. But then the SAC in Seattle, there's an email suggesting that he hadn't yet approved it. A bot. Mr. Bot. Yes. So who is the SAC that needed to give the approval for the promotion? A bot who actually did it. If you look through the record, he did it in June. Where? We're in the record. We'll be fine. I would have to dig through, Your Honor, to tell you the truth. Well, that's what you're asking me to do. My apologies. Okay. How about you bring it up on rebuttal?  But let me just, one thing before you sit down. You just said something that I don't remember in your brief a minute ago that kind of took me back for a sec. You said, please, if you're sending it back, don't send it back to this particular AJ. Did you ask us for that in the brief? Yes. You did? I didn't remember that. Okay. And why? What in particular is it that you think demonstrates that this AJ could not fairly adjudicate this case if it was sent back to them? He denied us every possible form of discovery. He committed an actual abuse when he took that deadline that the MSPB sets at its minimum of 10 days, cut it in half. He denied us depositions during a pandemic. He denied us relief even though the government had agreed to it. He was short with us. He misstated things during a conversation he had, which when I pointed it out to him, he admitted he did it. Well, how about this? So when you come back up on rebuttal, you'll find the answer to that question about where in the record that approval is from Mr. Bott. And then also you come back up with one or two sites that directs me to your best evidence that demonstrates that this AJ can't fairly adjudicate this case. If you have some kind of smoking gun quote from the AJ, some kind of inflammatory statement, that would be helpful to hear.  Rather than just decisions that he made that you disagree with. Well, it's not – Okay. Your time is over. Sit down. Thank you. All right. Mr. Smith, please proceed. Good morning, Your Honor. May it please the Court. To give a little background for our student listeners, the Uniformed Services Employment and Reemployment Act of 1994 provides two protections to military service members returning to civilian employment following military service that are relevant to this case. The first is reemployment. And what that provides is that a service member is guaranteed the right to return to the position they would have had absent interruption for their military service. The second is discrimination. Okay. But before you move on – Certainly. For that first one, do you agree that the legal standard is reasonable certainty? That is one portion of the legal standard, Your Honor. But I'd like to turn the Court's attention to a separate track, which we certainly do have findings on in this opinion. And that is that a promotion, a GS promotion in this case, from GS-12 to GS-13, is not a right of employment applicable to all employees. And that's very important. And that goes back to actually what I just said about reemployment, in that you get to go back to where you were. And here, not every GS-12 employee is promoted to GS-13. That's not right. That's a requirement, though. I mean, isn't reasonable certainty a standalone separate inquiry that can be satisfied? In order for Mr. Knox here to get the GS-13 promotion. It is a third prong of the CFR, Your Honor. But the first – I read those as being separate independent bases to get a GS-13 promotion here, not that you have to satisfy all three of those. That is not how I read it, Your Honor. That being said, if you read it that way, I also think there is certainly evidence here for why it was not reasonably certain. I'm happy to discuss that. Have we ever had a case, I don't recall us saying in Hayden, for example, that you have to satisfy all three prongs of that regulation? Those prongs were treated separately, Your Honor. I cannot say – and I argued Hayden, actually. I can't tell on behalf of the petitioner in that case. I do not recall if those were. You switched sides. Yes, Your Honor. Counsel, one of the things that I have a concern about in this case is that I don't see where the AJ talked about reasonable certainty in his analysis. On page, for example, 813 of the record, I share Chief Judge Moore's concern about that. Do you think that the AJ addressed reasonable certainty? I just don't see it all. Instead, it seems to be that he was focused on whether there was a right to this discretionary promotion, as opposed to whether it was reasonably certain that he could have gotten it. He does not use the words reasonably certain in the opinion, Your Honor. I believe that he certainly devotes significant effort into that right of employment standard. I also think there is substantial evidence in the record demonstrates that it was not reasonably certain in this opinion. But how can we review a nonexistent fact finding on reasonably certain for substantial evidence when we don't even have a fact finding expressly before us? Again, I don't necessarily think that's necessary here, given that we've determined that the GS promotion was not, in fact, a right of employment. Second of all, we would have to address the evidence that we do have in the record, Your Honor. Let's turn to that. Can I ask this right of employment thing? Can you explain it? I mean, I've got the CFR in front of me. I assume that we're talking about 353.106? That is correct, Your Honor. So where are you deriving this right of employment concept? 4316B4 specifically says that as part of a reemployment rate. I'm sorry. What is it? B4? B4, yes, Your Honor, specifically indicates that a returning service member is I don't have a 4. I have a B. Oh. What am I missing, really? Is it 353.106? Excuse me. I have 38 U.S. I'm referring back to the USARA statute. My apologies, Your Honor. All right. Yeah. Okay. So which one? The 4316? 38 U.S.C. 4316B4. 4316? Specifically indicates that a service member is not entitled to reemployment to a position that they would not have been entitled to had they remained consistently employed. Here, there is no allegation, nor is it true, that every GS-12 employee is automatically promoted to GS-13? That's true, but no GS-12 is automatically entitled to a GS-13 promotion after 3 years of service in GS-12, but there are other factors at play here. Certainly, Your Honor. Did he get the SAC approval? No. And I think that's very important, as is the timing between the relative approvals. So The SAC, the acting SAC in Portland approved the promotion. Is that right? In June. But it came through. Yes, but I think the timing is very important, Your Honor. And then what about the SAC in Seattle? I am not aware of any such approval in 2004. Okay. So the point is, we're looking at someone who has a SAC approval. We know, we've seen the statistics, and that the three prior fiscal years, people in Mr. Knox's position who were GS-12 and had 3 years service in GS-12 were promoted to GS-13 at about a 98% clip for the prior 3 years. So it looks overwhelmingly likely that if you are a GS-12 with 3 years in service, you get the GS-13 promotion, especially when you have the SAC approval. And then there's evidence that other people similarly situated to Mr. Knox did, in fact, get that approval during that time frame. So why can't all of those be factors that on remand the Board can consider, which it did not consider in the first instance, to assess whether or not it would have been reasonably certain that back at that time Mr. Knox would have gotten a GS-13 promotion? Those are certainly factors that can be considered, Your Honor. And they were not considered. Is that fair to say? I do not agree with that, Your Honor. Okay. Because I read the Board's decision saying these types of promotions are discretionary and they're not automatic. And because they're not automatic, then you don't have a right to say that there was a NACERA re-employment plan here. Well, that is certain.  That seems to be the beginning and end of the analysis. With regards to reasonable certainty, Your Honor, I do not disagree with you. I will say that is in accord with both the Supreme Court's opinion regarding reasonable certainty and Tilton, where they said if this is discretionary, if this is based on the ability and the credentials of the individual, that that's not reasonably certain. Tilton only said that if the only thing you're relying on is your time in service and that you would have had the time in service, for a discretionary promotion, that's not good enough. Here we don't have that. We have the evidence that 98 percent of the time people like this get the promotion. We also have the other evidence of at least some supervisors approving. We could quibble right now whether it was the right SAC that gave the approval. But nevertheless, that is something that needs to be evaluated on remand, it would seem. I would like to quibble one step further than you identified, Your Honor, in that Mr. Knox is urging his court to find that he would have received the promotion in February. And frankly, Your Honor, those approvals did not exist. When he approached his supervisor in March, his immediate supervisor, she declined to submit that promotion at the time, as did the ASAC, the ASAC. Because at the time, the within grade increase did not kick in until April. That's the only reason why the supervisor didn't. Your Honor, I do not believe. Again, this could be evaluated more on remand. Your Honor, I think the administrative judge did make a finding as to whether that tie-in was there. And he indicated that neither party presented the requisite evidence to tie in that delay to the ASAC. Excuse me, to the failure to promote him whatsoever. And I would humbly submit, Your Honor, that every citation with regards to what the immediate supervisor was thinking in the record that's provided is simply to a declaration provided by Mr. Knox himself. There's no evidence demonstrating why in March she was not willing to move forward. I would agree that the question of whether it would have been reasonably certain that Mr. Knox would have gotten the promotion is a question of fact. I would have to consider that, Your Honor. Again, I don't think we even get there. I didn't quite hear an answer. Is it a yes? To be honest, no, Your Honor. That's a legal question? Well, in light of this court's precedent in Hayden and in Tilton. In Hayden? In Hayden, we reviewed the finding by the board that in that particular instance, Mr. Hayden's promotion would not have been reasonably certain. And we concluded that substantial evidence supported that finding. So under that circumstance, don't you think Hayden teaches us that it's a question of fact? I stand corrected, Your Honor. If that was the substantial evidence affirmance on that question, then I stand corrected. Okay. So it's a fact finding that maybe, just maybe, needs to be done in the first instance. We can't do it, and the board didn't do it yet, right? Well, the board did provide findings that this was not a mandatory promotion, excuse me, an automatic promotion, and that there was wiggle room here. One of my concerns with this is I do feel like your opposing counsel basically said you read the word reasonable out of reasonable certainty. Certainty seems like something on a spectrum between discretionary and automatic. Certainly, certainty seems automatic. Reasonable certainty I feel like must be just a little shy of automatic, don't you think? I think there's a gray area there, Your Honor. Your Honor, for instance, in the position where the X percent of employees were automatically going to, excuse me, were entitled to a GS-13 promotion based on some test, but then the individual departed from military service. That, to me, would be reasonably certain. Here is the evidence, isn't it, that it's 98 percent with SAC approval? Under the three-year grade in the preceding three years. I think if you look, as we suggest in our brief, if you look at the wider discretionary approval process for the GS-12, GS-13 promotion, those are different. I will, again, referring back to Hayden, we were talking about 90 percent there as well. So I don't think the percentage is necessarily relevant. I also think there are reasons in the record here to suggest that this was a time of flux, as I believe Chief Judge Moore questioned Mr. Knox's counsel for. I think the concern is that was there a time of flux in February? There was a time of flux at the time that he was actually considered because of the mistaken time of increasing his staff. Your point is well taken, Your Honor. That being said, I do think that the three months from the March to June is instructive on this point. That, at the very least, the evidence suggests that we are looking at a period of multiple months before this goes up to actual approval. And even had Mr. Knox been approved, and we make this point in the brief, even had Mr. Knox had the requisite approvals, which he lacked as of February, even had his immediate supervisor been willing to promote him in February, which he was not, there was a delta in the gap between when those promotions were raised up through the chain and when they received approval. Here, that's three months. Can you address for me the point that opposing counsel made about whether, if we were to send this back, it should go back to the same AJ or not? It normally does go back to the same AJ. Certainly. And, Your Honor, I don't think there's any substantiated allegation of bias here that would prevent that. I will, to Mr. Knox's counsel's point, he did make that request. I think it's page 17 of his brief or the like. This is not a new request. And I'm sorry because I obviously missed it. What was the government's response to that? That there was no bias substantiating that. Frankly, the allegations of bias here are about substantive questions that were asked during a scheduling conference. I'd humbly submit, Your Honor, that that happens to me on a routine basis. I've certainly had many initial status conference scheduling conferences where we get into the weeds of particular matters. And that does not raise the allegation of bias. Nor does, I believe, there was the allegation that no discovery had been granted. That's incorrect. In fact, they won a subsequent motion to compel on separate grounds. A failure to participate in a meet and confer is a valid reason for eliminating, excuse me, rejecting a motion to compel. Okay, so if we were to vacate and remand this, what do you think the next steps are? What would happen? Well, I think we have one, it would go down to the AJA for a fact finding with regards to, I think your belief would be reasonable certainty. Frankly, I do not believe that's necessary, obviously, but you might disagree. Then we would have the question of, with regards to a discrimination claim, we would have to allow the government to present, should the administrative judge find that there was some motivating factor with regard to military service. Under the burden-shifting framework of USARA discrimination claims, it would now flip back on the government to show that it would have taken the same action necessary, even after the discrimination. The opposing counsel said there was no evidence to support the idea that there was no link between the military service and the delay in grade increase. And so, therefore, the board's, the AJA's finding to the contrary is it needs to be reversed. Can you comment on that? In other words, the board essentially put the board on, the burden on Knox. That is correct, Your Honor. The discrimination must be shown by the appellant. Under the USARA burden-shifting framework, he needs to come forth with a showing of motivation or consideration of the military service. The administrative law judge here found that such evidence was lacking, that neither party had shown why that occurred. And then he was prejudiced by having his motions for discovery denied. So, how would you respond to that? Certainly, Your Honor, the evidence that is in the record as it exists today does not support any substantial or motivating factor. The only evidence cited by Mr. Knox is a piece of discussion between two HR personnel, which actually postdated the within-grade increase being granted, so it's not prohibitive of the matter of whether, of any military service being considered at the time. I believe that, again, Mr. Knox's failure to comply with the administrative law judge's procedures regarding discovery was a valid reason to deny the motion to compel, and therefore there's no reason to reopen the record. And, in fact, as the opinion hints at, the government's latches defense would have teeth should we get down into the weeds again. It's been 17 years. Counsel, I have a question for you.  Your question about what would be considered on remand confused me a little bit, and let me tell you why. Okay. I think on the right to reemployment, that is what we're talking about with reasonable certainty, and that is what we're talking about vacating and remanding. I don't understand why you'd get into the discrimination and the burden shifting on that issue, because I don't think that has any applicability to the right to reemployment. We 100 percent agree, Your Honor.  I must have misunderstood the question. If it was only a remand on the reemployment, we would not have to get into the burden shifting framework or the like. Apologies if I confused the Court. Okay. Thank you, Mr. Smith. Mr. Burns, you have a little bit of rebuttal time. Yes. Just very briefly, just to answer Judge Chen's question, we cited it. It's part of the underlying tab. I will admit that the tab says that this position cited is a tab one of the underlying record before the administrative judge. My apologies. And it says that it was approved sometime before June 3, 2004. By whom? By Baugh.    And the second point you raised was why would the judge's actions be so biased that we would want a remand? This Court has ruled that restricting the discovery deadline below the minimum is itself an abuse of discretion, and federal courts have ruled that as well. The rule set the minimum, which is 10 days, but otherwise the judge could say you have one day. Well, you have no days. The concern is this, is just because maybe we would say that a judge abused his or her discretion doesn't mean that they're so biased that they can't hear the case on remand. How do you tie those two things together? When a judge questions my integrity in front of my client and asks my client directly what he did and directly what he said to me, I do take exception to that. I think that was borderline unethical. Where is that? It's in the summary of the status hearing. One of the objections I raised, which the judge didn't deny, is he queried Mr. Knox directly on a document suggesting that I had misstated the record by citing that document. And I objected to that rather vehemently, saying you're asking my client to go into our discussions. Can you tell me where I can read that? It is in our response to the summary status conference. And in his reply, which he raises the bias. What page? Do you have a page for me? Okay, certainly. My apologies, Your Honor. The exact citation is contained within our actual brief in the record. And I'm just trying to find it.  Might I just ask briefly my assistance from my first wild card report? Sure. Oh, certainly. Your Honor. You don't have to tell me. It's in section E of our brief. It cites the appendix citations for all these quotes. There are a number of citations on page 44 and 45 of our brief. Is there a particular one that you think is best? You said he questioned your integrity. He basically called you a liar. I want to see it. I want to see where he supposedly did this. Appendix 1235, I think, is where we... So this is your own pleading at 1235? Yes, ma'am. Yes, ma'am. And then his response is... I responded to his order in summary of the conference call. So it's all in writing. I don't see here where he called you a liar. I don't see this. Where? No, he didn't say he called me a liar. He said he questioned my integrity. Where did he question your integrity? Where? I don't see anything. Judge... You know, if you're going to ask us to send it back to a new judge, that is a pretty big deal thing. And to make that kind of accusation, you should come here fully prepared to defend it. Because jurists are not generally biased. And when you make allegations that this one was, you pretty much have to have your ducks in a row. Well, but... I think we're out of time. Oh, thank you, Your Honor. Thank you, Judge Counsel. Please take another commission.